## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JACKSON WALKER,
and TROY GREENE,

      Plaintiffs,

      vs.                                        Civ. No. 19-714 JAP/GBW

JEMEZ MOUNTAIN SCHOOL DISTRICT,
NORMA CAVAZOS, in her individual capacity, and
BUDDY DILLOW, in his individual capacity.

      Defendants.

### MEMORANDUM OPINION AND ORDER

On October 8, 2019, Plaintiffs Jackson Walker and Troy Greene filed an AMENDED COMPLAINT FOR DAMAGES ("Complaint") (Doc. No. 9). On March 18, 2020, Defendants Norma Cavazos and Buddy Dillow (collectively, "Defendants") filed INDIVIDUAL DEFENDANTS' MOTION TO DISMISS BASED ON QUALIFIED IMMUNITY AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM ("Motion") (Doc. No. 20). After considering the parties' briefing and the controlling law, the Court will grant Defendants' Motion.

### Background

Plaintiff Walker is a former student of Coronado High School ("CHS") in the Jemez Mountain School District ("District") in Gallina, New Mexico. Compl. at ¶ 44. Plaintiff Greene is also a former student of CHS. *Id*. at ¶ 45. Defendant Dillow is the principal at CHS. *Id*. at ¶ 46. Defendant Cavazos is the superintendent of the District. *Id*. at ¶ 31.

In January 2017, CHS and the District "implemented a computer-based academic program titled Edgenuity as the principal basis of instruction and grading with the school district." *Id*. at ¶ 15. The Complaint alleges that the District had a shaky rollout of the Edgenuity grading software.

*Id.* at ¶¶ 18–34. During Plaintiff Walker's high school tenure, his mother, Heidi Walker, was a teacher at CHS. *Id.* at ¶ 13. Ms. Walker had some authority to enter "bypasses," which allowed students to bypass incomplete Edgenuity course work in order to access exams. *Id.* at ¶ 51, 54; Mot. at 1. Ms. Walker's alleged use of bypasses for Plaintiffs' assignments led to her termination and the permanent revocation of her teaching license.[1] *See* Compl. at ¶¶ 13, 14.

Plaintiffs graduated from CHS in May 2017, "participated in the graduation ceremony, and received their diplomas." *Id.* at ¶ 111. In May 2017, Plaintiffs "began making a series of requests to CHS for transcripts to be sent to colleges" to which they were applying. *Id.* at ¶ 112. In August 2017, the District informed Plaintiff Walker "that an investigation was being conducted because of alleged 'discrepancies' in Jackson's academic records." *Id.* at ¶ 113. The investigation included Plaintiff Greene's "academic history and qualifications" as well. *Id.* Defendants Dillow and Cavazos, in an attempt to verify Plaintiffs' graduation eligibility and the effect of Ms. Walker's bypasses, reviewed Plaintiffs' Edgenuity records. *Id.* at ¶¶ 117–20. Defendants subsequently revoked Plaintiffs' high school diplomas. *Id.* at ¶ 124. Defendants allegedly have refused to reissue Plaintiffs' diplomas and have "failed to issue to colleges and universities true and accurate transcripts of their high school course work and grades." *Id.* at ¶ 125. Plaintiffs seek "restitution of their high school diplomas and appropriate modifications to their high school transcripts[,]" as well as damages, pre- and post-judgment interest, and attorney's fees. *Id.* at 207–14.

### Motion to Dismiss

A Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the complaint[.]" *Mobley v. McCormick*, 40 F.3d 337, 340

---

[1] The Complaint is replete with allegations and details about the implementation of Edgenuity and the dispute around Ms. Walker's use of bypasses. Few of those allegations are relevant to the case and the Court need not detail them further.

(10th Cir. 1994). When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The allegations must "state a claim to relief that is plausible on its face." *Id.* A Court should grant a Rule 12(b)(g) motion to dismiss when, from the face of the complaint, it "appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Soc'y of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1241 (10th Cir. 2005) (internal quotation marks omitted).

Defendants Cavazos and Dillow have raised the defense of qualified immunity in their Motion. "The qualified-immunity doctrine protects public employees from both liability and 'from the burdens of litigation' arising from their exercise of discretion." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019), *cert. denied sub nom. Cummings v. Bussey*, 140 S. Ct. 81 (2019) (quoting *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266 (10th Cir. 2013)). It "shields government officials from liability where 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *A.M. v. New Mexico Dep't of Health*, 148 F. Supp. 3d 1232, 1290 (D.N.M. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity also shields officers who have 'reasonable, but mistaken beliefs,' and operates to protect officers from the sometimes 'hazy border[s]' of the law." *New Mexico Dep't of Health*, 148 F. Supp. 3d at 1290 (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)) (brackets in original). Under Tenth Circuit precedent:

> [w]hether a right is "clearly established" is an objective test: The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established

3

weight of authority from other courts must have found the law to be as the plaintiff maintains.

*Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (internal quotation marks and citations omitted). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity does not apply only to official actions specifically deemed unlawful, rather, "in the light of pre-existing law the unlawfulness must be apparent." *Id*.

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Doing so, however, "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Id.* (internal quotation marks omitted). "At the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Id.* (brackets and internal quotation marks omitted) (emphasis in original). The Court evaluates "(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted). The Court "may address the two prongs of the qualified-immunity analysis in either order: 'if the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense.'" *Cummings*, 913 F.3d at 1239, (quoting *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016), *cert. denied*, 137 S.Ct. 2151 (2017)). "[T]he onus in on the plaintiff to demonstrate" that the plaintiff has satisfied the two prongs of the qualified immunity inquiry. *Cummings*, 913 F.3d at 1239.

**Analysis**

Plaintiffs allege that Defendants violated their rights under the United States and New Mexico Constitutions. Defendants move for a dismissal under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. In doing so, Defendants have raised the affirmative defense of qualified immunity. The Court will separately address each Count raised in the Complaint and test it under the standards of dismissal. Because the Court concludes it can dismiss the Complaint, without resorting to summary judgment, the Court need not address Defendants' alternative motion.[2]

**Count I: Federal Procedural Due Process—Right to a Diploma**

Plaintiffs first allege that Defendants deprived Plaintiffs of their constitutional due process right to "receive a meaningful opportunity to be heard prior to depriving them of the benefits associated with a high school diploma and their protected property interests in the diplomas." Compl. at ¶ 131. Plaintiffs argue that "[a] reasonable public officer would have known that revoking the high school diplomas of a high school student and altering their transcripts violated [Plaintiffs'] constitutional rights . . . because the law was clearly established at the time." *Id.* at ¶ 139. Defendants counter that "Plaintiffs cannot establish that they have a protected property interest in keeping their diplomas or original, unmodified academic transcripts" and therefore procedural due process protections are not implicated. Mot. at 11. Defendants also assert the defense of qualified immunity. *Id.* at 3.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of

---

[2] When a court can resolve a motion to dismiss on only the complaint's content, it does not need to convert the motion to dismiss into a motion for summary judgment. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) ("A motion to dismiss challenging the legal sufficiency of the complaint is properly considered under Rule 12(b)(6) if the court analyzes only the complaint itself.").

the . . Fourteenth Amendment." *Montoya*, 662 F.3d at 1167 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976)). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Montoya*, 662 F.3d at 1167. To assess "whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Id*. (quoting *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011)).

Plaintiffs argue that they have a protected interest in keeping their diplomas and transcripts as originally issued. Plaintiffs ground this theory in a constitutional right to an education as established in *Goss v. Lopez*, 419 U.S. 565 (1975). Plaintiffs also cite to several out-of-circuit cases to support the contention that "educational benefits created by state statute are established property interests" that cannot be taken away without comporting with due process. PLAINTIFFS' RESPONSE TO THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS BASED ON QUALIFIED IMMUNITY AND, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ("Response") (Doc. No. 28) at 10–11.

The Supreme Court has interpreted the Due Process Clause to guarantee that once a state "establish[es] and maintain[s] a public school system . . . and [] require[s] its children to attend . . . the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause . . . ." *Goss*, 419 U.S. at 574. A student's ability to attend public school "may not be taken away for misconduct without adherence to the minimum procedures" required by due process. *Id*. The right recognized by the Supreme Court in *Goss*, however, is distinct from the right Plaintiffs urge the Court to acknowledge—i.e., that they possess a protected property interest in their diplomas and transcripts.

Under New Mexico law, "[s]uccessful completion of a minimum of twenty-four units aligned to the state academic content and performance standards shall be required to earn a New Mexico diploma of excellence." NMSA 1978 § 22-13-1.1. Plaintiffs have not offered, nor has the Court found, any case interpreting this provision of New Mexico law to guarantee a property interest in a diploma of excellence. The Tenth Circuit has recognized that "New Mexico's constitution gives each child the right to a free public education." *Ellenberg v. New Mexico Military Inst.*, 478 F.3d 1262, 1270 (10th Cir. 2007) (citing N.M. Const. art. XII, § 1; NMSA 1978 § 22–1–4.3). "The New Mexico legislature has defined this right as an entitlement to attend a public school within the school district in which the student resides." *Ellenberg*, 478 F.3d at 1270 (citing NMSA 1978 § 22–12–4). Once more, however, the Complaint does not allege any deprivations of Plaintiffs' educations.

The Tenth Circuit has interpreted *Goss*, albeit in the context of high school sports, as recognizing "a student's entitlement to a public education as a property interest which is constitutionally protected." *Albach v. Odle*, 531 F.2d 983, 985 (10th Cir. 1976). But the Tenth Circuit noted that "in framing the property interest[,] the Court in *Goss* speaks in terms of the 'educational process.'" *Id.* (quoting *Goss*, 419 U.S. at 576). In concluding that students do not have a protected right to participate in interscholastic athletics, the Tenth Circuit expressed:

> [t]he educational process is a broad and comprehensive concept with a variable and indefinite meaning. It is not limited to classroom attendance but includes innumerable separate components, such as participation in athletic activity and membership in school clubs and social groups, which combine to provide an atmosphere of intellectual and moral advancement. We do not read *Goss* to establish a property interest subject to constitutional protection in each of these separate components.

*Albach*, 531 F.2d at 985. The Tenth Circuit has reaffirmed this position and made clear that students do not have a constitutionally protected property interest in "particular incidents of

education." *Seamons v. Snow*, 84 F.3d 1226, 1235 (10th Cir. 1996) ("In *Albach* we explained that the innumerable separate components of the educational process, such as participation in athletics and membership in school clubs, do not create a property interest subject to constitutional protection."). This precedent suggests that a diploma may be fairly considered another "incident of education" that is part of the overall education process. The Court recognizes that earning a diploma is different from participating in high school sports. Plaintiffs, however, have not provided any Tenth Circuit or New Mexico case distinguishing the proprietary guarantees, if any, of NMSA 1978 § 22-13-1.1 in light of *Goss* and *Albach*.

Instead, Plaintiffs point to case law in other circuits recognizing a student's right to a diploma, including *Debra P. v. Turlington*, 644 F.2d 397, 404 (5th Cir. 1981), *Bester v. Tuscaloosa City Bd. of Educ.*, 722 F.2d 1514, 1516 (11th Cir. 1984), and *Brookhart v. Illinois State Bd. of Educ.*, 697 F.2d 179, 185 (7th Cir. 1983). In *Turlington*, the Fifth Circuit did explicitly construe *Goss* to guarantee a property right to a diploma "if a student attends school during those required years, and indeed more, and if he takes and passes the required courses . . . ." *Turlington*, 644 F.2d at 404. The Eleventh Circuit agreed, but also added that "plaintiffs had no property right in the expectation that substandard scholastic achievement would continue to be accepted as a basis for promotion." *Bester*, 722 F.2d at 1516. The Seventh Circuit in *Brookhart* recognized that, under *Goss*, students:

> had a right conferred by state law to receive a diploma if they met the requirements imposed prior to [the state changing graduation requirements]: completion of seventeen course credits and fulfillment of the State's graduation requirements. In changing the diploma requirement, the governmental action by the School District deprived the individual of a right or interest previously held under state law.

*Brookhart*, 697 F.2d at 185. In those circuits, students have a clearly established right to a high school diploma conditioned upon completion of state-imposed graduation requirements.

This case is distinguishable from *Turlington*, *Bester*, and *Brookhart*. None of these cases addressed qualified immunity, individual school administrator action, or the revocation of an awarded diploma. *Turlington* concerned a newly enacted competency examination, upon which diplomas were conditioned. 644 F.2d at 400. The Fifth Circuit concluded that Florida could not "constitutionally deprive public school students of their high school diplomas on the basis of an examination  . . . [i]f the test covers material not taught the students." *Id*. at 400, 402. Similarly, *Bester* involved a city changing its educational standards. 722 F.2d at 1515. In *Bester*, the Eleventh Circuit held that students had no property right in the continued use of a particular grading standard. *Id*. at 1516. In *Brookhart*, the school implemented a minimal competency exam as a condition to receiving a diploma. 697 F.2d at 181. The Seventh Circuit believed that due process required giving students adequate notice to prepare for the exam and an opportunity to complete any required coursework. *Id*. at 186. These cases demonstrate that states may have some duty to allow students a fair chance to graduate notwithstanding changing graduation standards. But they say nothing about an administrator's duties with respect to revoking a diploma for potential academic dishonesty. The Court does not believe that these three cases would have put Defendants on notice that their actions would violate Plaintiffs' constitutional rights.

Plaintiffs have not met their burden in demonstrating that this claimed right to a revoked diploma or to uncorrected transcripts is "clearly established" in the Tenth Circuit. Plaintiffs have not proffered a single Tenth Circuit case construing *Goss* to recognize a right to a diploma or transcripts in the way these other three circuits have. In the Court's opinion, cases from three circuits—which are not on all fours with the facts here—do not constitute "clearly established weight of authority from other courts[.]" *Montoya*, 662 F.3d at 1164; *see, e.g.*, *Stewart v. Donges*, 915 F.2d 572, 582 (10th Cir. 1990) (noting that law from seven sister circuits sufficiently put the

defendant on notice of a clearly established right). Plaintiffs have not sufficiently supported their claim that a reasonable school district employee would know that conditionally revoking a diploma, in order to confirm whether a student actually earned the diploma, was contrary to clearly established law. Under *Goss*, students have a clearly established right to attend school and not be deprived of their attendance without due process. *Goss*, 419 U.S. at 574. Plaintiffs, however, have not alleged that Defendants deprived them of their right to attend CHS. The Court does not need to decide if NMSA 1978 § 22-13-1.1 creates a constitutional property right to a diploma upon meeting the state's graduation requirements, only whether that right (if any) is clearly established. Plaintiffs have not demonstrated this. Defendants are therefore entitled to qualified immunity on Count I.

### Count II: Federal Substantive Due Process—Right to a Diploma

Plaintiffs next allege that Defendants "owed Jackson and Troy a constitutional duty to not engage in any conduct that would unlawfully cause a deprivation of a protected property interest in their rights and privileges associated with obtaining their high school diplomas." Compl. at ¶ 142. Defendants contend that there is no law "establishing that a student has a fundamental personal interest derived from the United States Constitution in graduating high school or in having a high school diploma." Mot. at 15. Plaintiffs argue that the liberty interest implicated here is "grounded in the 'stigma' attached to injury to the reputation of the students deprived of their constitutional rights under a cloud of accusations . . . ." Resp. at 14 (quoting *Brookhart*, 697 F.2d at 185–86).

Procedural due process and substantive due process share some overlapping concerns, but substantive due process "bars 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Abdi v. Wray*, 942 F.3d 1019, 1027 (10th Cir. 2019)

(quoting *Montoya*, 662 F.3d at 1172). "It limits what the government may do in both its legislative and executive capacities." *Abdi*, 942 F.3d at 1027. Substantive due process violations include "government action [that] infringe[s] a 'fundamental' right without a 'compelling' government purpose, [] as well as where government action deprives a person of life, liberty, or property in a manner so arbitrary it 'shocks the conscience,'" *Id.* (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)). The Tenth Circuit applies a "fundamental-rights approach when the plaintiff challenges legislative action, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious executive action[.]" *Abdi*, 942 F.3d at 1027 (quoting *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018)).

Plaintiffs appear to argue that the government action here is an arbitrary deprivation of a liberty and property interest. *See* Compl. at ¶ 146 ("[Defendants], in effectuating the deprivations of [Plaintiffs'] property interests, engaged in arbitrary and capricious actions that lacked justification, reason, and evidence."). The Court will accordingly analyze the complaint under the Tenth Circuit's "shocks-the-conscience" framework.

Conscience-shocking conduct:

> requires much more than mere negligence. Indeed, even the actions of a reckless official or one bent on injuring a person do not necessarily shock the judicial conscience. *Id.* Conduct that shocks the judicial conscience is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice. To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or employed it as an instrument of oppression. The behavior complained of must be egregious and outrageous.

*Huckaby*, 902 F.3d at 1155 (internal quotation marks and citations omitted) (emphasis added). "Substantive due process sanctions conduct that was 'inspired by malice or sadism rather than a merely careless or unwise excess of zeal . . . .'" *Littlefield v. Piedra Vista High Sch. Admin.*, No. CIV 15-177 RB/SCY, 2015 WL 13658642, at *3 (D.N.M. Aug. 21, 2015) (quoting *Harris v.*

*Robinson*, 273 F.3d 927, 930 (10th Cir. 2001)). "[A] plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006).

The Court believes that Defendants' conduct as alleged does not shock the judicial conscience. The Court does not deny that the rescission of Plaintiffs' diplomas and modification of their transcripts, without process they believe is sufficient, must be frustrating and embarrassing. Even assuming as true Plaintiffs' accusations that Defendants singled out Plaintiffs for mistreatment as a result of soured relations with Ms. Walker, the Court finds that the allegations are not egregious and outrageous. *See Huckaby*, 902 F.3d at 1155 ("Indeed, even the actions of a reckless official or one bent on injuring a person do not necessarily shock the judicial conscience."). Public school administrators often make discretionary decisions that students may not like or with which students disagree. Without further evidence that Defendants' actions transgressed basic notions of human decency, the Court believes Defendants have not denied Plaintiffs substantive due process. Because Plaintiffs have not sufficiently plead a violation of their substantive due process rights, qualified immunity shields Defendants from suit on Count II.

## Count III: New Mexico Procedural Due Process—Right to a Diploma

Qualified immunity applies equally under New Mexico law and federal law. *See Starko, Inc. v. Gallegos*, 2006-NMCA-085, ¶ 11, 140 N.M. 136, 140 P.3d 1085. "[A]n individual official's liability is limited by the doctrine of qualified immunity, which shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (internal quotation marks and citations omitted).

Defendants argue that "New Mexico's constitution, the exact section pursuant to which Plaintiffs bring their third and fourth causes of action, does not provide any greater protection than its federal constitutional counterpart." Mot. at 16 (citing *Montoya ex rel. S.M. v. Española Pub. Sch. Dist. Bd. of Educ.*, 968 F. Supp. 2d 1117, 1120 (D.N.M. 2013). The *Española* Court noted that

> [t]he Supreme Court of New Mexico . . . has the power to "provide more liberty than is mandated by the United States Constitution." *State v. Gomez*, 122 N.M. 777, 932 P.2d 1 (1997). New Mexico courts have adopted what is called the "interstitial approach" to independent interpretation of provisions of the state constitution for which there are analogous provisions of the federal constitution. Under the interstitial approach, the court asks first whether the right being asserted is protected under the federal constitution. If it is, then the state constitutional claim is not reached. If it is not, then the state constitution is examined. *Gomez*, 122 N.M. 777, 932 P.2d 1. However, a state court adopting this approach may diverge from federal precedent for three reasons: a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics. *Id.* at 783, 932 P.2d 1. Thus, the state constitution has been interpreted to provide broader protection where the federal analysis has been deemed flawed. *Id.*

*Española*, 968 F. Supp. 2d at 1118–19. The *Española* Court rejected the argument that the due process provisions of the New Mexico Constitution, as applied to education, were structurally dissimilar or distinct enough from federal law to warrant a new analysis. *Id.* at 1119. The *Española* Court also did not identify any New Mexico law rejecting the federal due process precedent as flawed. *Id.*

Plaintiffs, although in agreement that *Española* would apply here, "claim a different result flows from that precedent." Resp. at 15. Plaintiffs do not elaborate what the different result is. "[T]he party seeking relief under the state constitution [bears the burden] to provide reasons for interpreting the state provisions differently from the federal provisions when there is no established

precedent." *ACLU of NM v. City of Albuquerque*, 2006-NMCA-078, ¶ 18, 139 N.M. 761, 137 P.3d 1215 (citing *State v. Druktenis*, 2004-NMCA-032, ¶ 38, 135 N.M. 223, 86 P.3d 1050); *see also Gomez,* 1997–NMSC–006, ¶ 19. Plaintiffs have not met that burden here. Accordingly, the Court will dismiss the state constitutional procedural due process claim on the same grounds as the analogous federal claim.

### Count IV: New Mexico Substantive Due Process—Right to a Diploma

Plaintiffs have similarly failed to meet their burden in showing that the New Mexico Constitution would require a different substantive due process analysis. The Court adds that the *Española* Court explicitly concluded that alleged "violations of substantive due process in the context of public education and adherence to state statutes and administrative codes" had "no basis [for protection] as part of the state constitutional provision concerning due process, either on a structural basis or from an analytical standpoint." 968 F. Supp. 2d at 1119. The Court sees no reason to depart from that conclusion and will dismiss Count IV.

### Count V: Federal Free Speech Retaliation

Plaintiffs allege that Defendants were "determined to revoke [Plaintiffs'] diplomas because of [Ms. Walker's] participation in speech protected under the First Amendment." Compl. at ¶ 173. Plaintiffs believe the revocation of their diplomas was retaliation for Ms. Walker's vocal advocacy against the implementation of the Edgenuity software. *See id*. at ¶ 178. Defendants argue that Plaintiffs have failed to allege a violation of a constitutional right because Plaintiffs lack standing to raise a retaliation claim. *See* Mot. at 17–18. Defendants argue that they did not violate any right of Plaintiffs because Plaintiffs' speech is not implicated or, alternatively, because Ms. Walker may assert her own retaliation claim. *Id*.

14

"The government may not 'deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech'—even though the person has no right to the valuable governmental benefit and 'even though the government may deny him the benefit for any number of reasons.'" *Seamons*, 84 F.3d at 1236 (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). In the Tenth Circuit:

> [w]here the governmental defendant is not the plaintiff's employer nor a party to a contract with the plaintiff . . . [g]overnment retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). The Court's standard "for evaluating that chilling effect on speech is objective, rather than subjective." *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004) (citing *Smith v. Plati*, 258 F.3d 1167, 1176–77 (10th Cir. 2001).

Plaintiffs, curiously, do not allege any of these elements. Plaintiffs do not claim they engaged in protected expressive activity, nor do they allege that their speech is chilled by the revocation of their diplomas. Instead, Plaintiffs seem to imply that Defendants' actions dissuade Ms. Walker—who is not a party to this case—from engaging in protected speech. *See* Compl. at ¶ 178 ("A causal connection exists between [Ms. Walker's] participation in First Amendment protected activity and the retaliatory revocations and altered transcripts . . . ."). Without citing a single case from the Supreme Court or from the Tenth Circuit, Plaintiffs argue that Defendants have standing to redress what appears to be harm to Ms. Walker. This argument fails.

The Supreme Court has expressed that limitations on standing "encompass[] 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of

generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Despite the Supreme Court's "general reluctance to permit a litigant to assert the rights of a third party," in the context of jury selection, a criminal defendant can assert standing on behalf of an improperly excluded juror if he or she meets three conditions: "(1) the defendant suffered an 'injury in fact'; (2) he had a 'close relationship' to the excluded jurors; and (3) there was some hindrance to the excluded jurors asserting their own rights." *Campbell v. Louisiana*, 523 U.S. 392, 397 (1998) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).

Two district courts within this circuit have extended this test, involving the ability of a criminal defendant to assert an exlcuded juror's right, to the First Amendment context. *See Finley v. City of Colby, Kansas*, No. 17-CV-1215-EFM, 2018 WL 3472816, at *4 (D. Kan. July 19, 2018); *Mackey v. Watson*, No. 17-CV-01341-CMA-STV, 2018 WL 4376440, at *6 (D. Colo. Aug. 2, 2018), *report and recommendation adopted*, No. 17-CV-01341-CMA-STV, 2018 WL 4360624 (D. Colo. Sept. 13, 2018). Those district courts have required "the plaintiff to demonstrate (1) that he suffered an injury, (2) a close relationship exists between the plaintiff and the third party who possessed the First Amendment rights, and (3) 'some hindrance to the third party's ability to protect his or her own interests.'" *Finley*, 2018 WL 3472816, at *4. Plaintiff's reliance on those district court cases is misplaced, however, because for a right to be clearly established, there should be a Supreme Court or Tenth Circuit case on point. *See Montoya*, 662 F.3d at 1164.

Alternatively, Plaintiffs could show that a right is clearly established by demonstrating that the weight of authority in other circuits recognizes such a right. *Id.* Plaintiffs cite to one unpublished case in the Sixth Circuit to support their claims. *See* Resp. at 16 (citing *Nailon v. Univ. of Cincinnati*, 715 Fed. App'x 509, 513-14 (6th Cir. 2017)). Though *Nailon* appears to support Plaintiffs' position, one unpublished case from another circuit does not create a well-established right. And the Court has reservations about whether to allow Plaintiffs to vindicate a non-party's free speech rights absent clearer guidance from the Tenth Circuit. Plaintiffs have failed to meet their burden to provide "a Supreme Court or Tenth Circuit decision on point" or to demonstrate that "the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Montoya*, 662 F.3d at 1164. Plaintiffs therefore have not proven that it violates clearly established law to revoke a child's high school diploma in retaliation for a parent's—or a friend's parent's—protected expressive conduct. Therefore, the Court will dismiss Count V.

### Count VI: Federal Freedom of Association

Plaintiffs allege that Defendants deprived Plaintiffs "of the freedoms, rights, and privileges secured to them under the First Amendment because of their association with and to [Ms. Walker]." Compl. at ¶ 184. Defendants maintain that this right, as described, is not a First Amendment right but rather one that falls under the Fourteenth Amendment's substantive due process protections. *See* Mot. at 18–19. Defendants argue that Plaintiffs have not shown a violation of Plaintiffs' rights and that qualified immunity therefore applies. The Court agrees.

"[I]mplicit in the right to engage in activities protected by the First Amendment . . . [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). The First Amendment's expressive associational right extends to groups engaging

in "expressive association." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). This right is not "reserved for advocacy groups . . . [b]ut to come within its ambit, a group must engage in some form of expression, whether it be public or private." *Id.*

With respect to the familial right of association, the Tenth Circuit has noted it "is properly based on the 'concept of liberty in the Fourteenth Amendment.'" *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993) (quoting *Mayo v. Lane*, 867 F.2d 374, 375 (7th Cir. 1989)). A properly pleaded "constitutional claim of interference with the right to familial association requires two showings: (1) that the 'defendants intended to deprive [the plaintiffs] of their protected relationship' with a family member, and (2) that 'balancing the [plaintiffs'] interest in their protected relationship . . . against the state's interest in [the family member's] health and safety, defendants either unduly burdened plaintiffs' protected relationship or effected an unwarranted intrusion into that relationship.'" *Huckaby*, 902 F.3d at 1153–54 (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1196 (10th Cir. 2014)) (brackets in original).

Plaintiffs have conflated these two associational rights. Plaintiffs have not alleged that Defendants infringed their right to engage in First Amendment expressive association with Ms. Walker. Plaintiffs do not appear to have engaged in any expressive conduct at all. First Amendment expressive association is thus not implicated by the Complaint. And to the extent that Plaintiffs have requested a chance to amend their Complaint to describe the right in terms of the Fourteenth Amendment, *see* Resp. at 18, Count VI still fails as a matter of law. Plaintiffs cast their claim in vague terms of their ability to associate with Ms. Walker, not in terms of an undue burden upon or unwarranted intrusion into the Walker family. *See Huckaby*, 902 F.3d at 1153–54 (explaining the requirement to show undue burden to a protected relationship or an unwarranted intrusion into that relationship). Plaintiff Walker has not alleged that he is unable to "associate" with his mother as a

result of Defendants' actions or in what ways Defendants have unduly intruded upon their relationship. Furthermore, Plaintiff Greene is not a family member of Ms. Walker and would be unable to claim any familial interference. Plaintiffs essentially argue they have a right to generally associate with Ms. Walker for non-expressive purposes free of criticism or retaliation.[3] If such a right exists, Plaintiffs have not demonstrated it is clearly established law. Thus, Defendants are protected by qualified immunity and the Court will dismiss Count VI.

### Count VII: Federal Substantive Due Process—Defamation

Plaintiffs next allege that "[a]s a result of having been branded 'cheaters,' 'dishonest,' 'under-handed,' and 'deceitful,' because of the false charges leveled against them by [Defendants] with respect to their diplomas and grades, [Plaintiffs] were deprived of their high school diplomas, had their transcripts unlawfully altered, and all of this occurred under a cloud of humiliation, embarrassment, and disgrace." Compl. at ¶ 193. Plaintiffs allege this stigma negatively alters "their reputations and good standing within the District, Lindrith, Cuba, County of Rio Arriba, and New Mexico communities." *Id*. at ¶ 192. Defendants believe Plaintiffs have not pleaded a violation of a right sufficient to overcome qualified immunity. *See* Mot. at 21.

The Court views Count VII as derivative of the claims in Count II for violation of Plaintiffs' substantive due process rights. The conduct alleged must therefore shock the judicial conscience. *See Abdi*, 942 F.3d at 1027. But just as the Court did not believe the revocation of Plaintiffs' diplomas was conscience-shocking, the Court is not persuaded that any attendant stigma rises to the level of conscience-shocking.

---

[3] Insofar as Plaintiffs could recast Count VI as an expressive association retaliation claim, Plaintiffs have again not pleaded facts with respect to their own expressive conduct. Furthermore, the Court has already addressed and dismissed Plaintiffs' retaliation claim. *See* Section f, *supra*. Amendment would therefore be futile.

The parties' briefing, however, reveals that Plaintiffs may have meant to plead a procedural due process violation. *See* Resp. at 18–19 (arguing that the stigmatizing effect of revocation and deprivation of the benefits of a diploma constitute a violation of their due process rights). "[G]overnmental defamation, coupled with an alteration in legal status, violates a liberty interest that triggers procedural due process protection." *Montoya*, 662 F.3d at 1167. Courts refer to this test as the "stigma-plus" test. *Al-Turki v. Tomsic*, 926 F.3d 610, 617 (10th Cir. 2019). In addition to a harm to reputation, the alteration or extinguishment of "a right or status previously recognized by state law . . . officially removing the interest from the recognition and protection previously afforded by the State," invokes the protections of due process. *Paul v. Davis*, 424 U.S. 693, 711 (1976). As discussed above, Plaintiffs have not demonstrated that either New Mexico or Tenth Circuit law entitles Plaintiffs to a legal or property right in a diploma even if they complete the state requirements. Even assuming denial of a diploma could be considered defamation, which the Court need not decide, Plaintiffs have not shown how that denial constitutes "a significant alteration in a state-recognized legal status . . . ." *Al-Turki*, 926 F.3d at 621. Plaintiffs have not directed the Court to any New Mexico or Tenth Circuit guidance on what legal rights attach to a high school diploma, making it difficult for the Court to conclude Plaintiffs have shown the requisite "plus" to their stigma. Instead, Plaintiffs allege that the Defendants' actions will "continue to have a stigmatizing effect, particularly due to the effect that the revocations of their high school diplomas will have on future employment opportunities." Compl. at ¶ 196. But the Tenth Circuit has held that "[d]amage to prospective employment opportunities is too intangible to constitute deprivation of a liberty interest." *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1559 (10th Cir. 1993). Plaintiffs have not met their burden to allege a violation of their

substantive or procedural due process rights in the alleged harm to their reputation. Accordingly, the Court will dismiss Count VII.

### Count VIII: Federal Substantive Due Process—Conspiracy

In their final claim, Plaintiffs allege that "Defendants Cavazos and Dillow became significantly involved and intertwined in a concerted effort to unlawfully deprive [Plaintiffs] of their constitutionally-protected rights." Compl. at ¶ 199. Plaintiffs further allege that Defendants "committed unlawful acts by unlawful means," "acted the color of State law in conspiring against [Plaintiffs] for the purposes of depriving them of their procedural and substantive constitutional rights," and "conspired with and among themselves to effectuate the loss of [Plaintiffs'] constitutional rights." *Id.* at ¶¶ 201–03.

"A § 1983 conspiracy claim may arise when a private actor conspires with state actor to deprive a person of a constitutional right under color of state law." *Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1449 n. 6 (10th Cir. 1990). "[A] plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id.* (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)). "Further, a deprivation of a constitutional right is essential to proceed under a § 1983 conspiracy claim.'" *Kennedy v. Smith*, 259 F. App'x 150, 154 (10th Cir. 2007) (unpublished) (quoting *Snell v. Tunnell*, 920 F.2d 673, 701–02 (10th Cir.1990). "[T]o prevail on such a claim, 'a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights.'" *Kennedy*, 259 F. App'x at 154 (quoting *Dixon*, 898 F.2d at 1449).

Plaintiffs have not provided sufficiently detailed allegations of conspiracy to overcome a motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (brackets in original) (citations omitted). Plaintiffs have not alleged any specific agreement and concerted action between Defendants Cavazos and Dillow to deprive Plaintiffs of their constitutional rights. "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556–57. Defendants likely worked together on many issues, given their positions within the District. And although Plaintiffs allege many facts, none of those facts contain even a suggestion of a plausible conspiracy to deprive Plaintiffs of civil rights. Without more, Count VIII cannot survive this Motion. The Court will therefore dismiss Count VIII.

## Conclusion

Even assuming all the well-pleaded allegations in the Complaint as true, the Court concludes Plaintiffs failed to overcome Defendants' Motion because Plaintiffs have not demonstrated violations of constitutional rights, or alternatively, have not shown that the rights they seek to vindicate were clearly established under applicable law. Additionally, the Court need not consider Defendants' proffered evidence or resolve any conflicting factual disputes.[4] Therefore the Court will grant Defendants' Motion and will dismiss the claims against individual Defendants Cavazos and Dillow.

---

[4] In their Response, Plaintiffs informally moved to strike the "Undisputed Material Facts" in the Motion. To the extent this Motion is properly before the Court, the issue is moot given the Court's disregard of any facts asserted by Defendants.

IT IS THEREFORE ORDERED that the INDIVIDUAL DEFENDANTS' MOTION TO DISMISS BASED ON QUALIFIED IMMUNITY AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM (Doc. No. 20) is GRANTED and all of Plaintiffs' claims against Norma Cavazos and Buddy Dillow are dismissed.

SENIOR UNITED STATES DISTRICT JUDGE

23